UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **ILLINOIS CENTRAL RAILROAD COMPANY** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 20-1717** |
| | * | |
| **BROTHERHOOD OF LOCOMOTIVE ENGINEERS AND TRAINMEN** | * | **SECTION "L" (3)** |

Before the Court are cross Motions for Summary Judgment filed on behalf of Petitioner Illinois Central Railroad Company, R. Doc. 21, and on behalf of Respondent Brotherhood of Locomotive Engineers and Trainmen, R. Doc. 20. The Court has reviewed the submitted memoranda and the applicable law, and having heard oral arguments on the motions, now rules as follows.

    I.    BACKGROUND

This case arises out of a dispute over the validity of an arbitration award issued under the Railway Labor Act ("RLA"). The facts surrounding this matter are not in dispute. While off-duty on May 19, 2019, Kenneth Ferris, a locomotive engineer employed by Illinois Central, visited the home of another off-duty coworker. R. Doc. 19-1 at 2. The off-duty coworker was discussing work-related matters with an on-duty coworker,[1] who was in the crew room at the "old Depot" along with two African-American coworkers. *Id.* Then, the off-duty coworker handed the phone to Ferris who continued the conversation, and at one point, commented "Y'all some hardworking [N-word]s, y'all get it done." *Id.* The on-duty worker informed Ferris that he was on speakerphone, to which he responded, "Oh well." *Id.* The reactions of the on-duty employees were "described as

---

[1] The on-duty employee with whom Ferris was speaking, Mr. Martinez, is not African American. R. Doc. 19-1 at 67.

1

offended, uncomfortable, and surprised." *Id*. One of the African American coworkers filed a complaint thereafter giving rise to this dispute. *Id*.

Ferris received notice of a formal investigation by the railroad on May 31, 2019 to determine whether he caused "an intimidating, hostile or offensive atmosphere by verbally using a racial epithet" or violated any Company rules, policies or the Code of Business Conduct in connection with the incident. R. Doc. 19-1 at 122. A hearing was held on June 12, 2019. *Id*. at 137. Ferris was represented by his union, Brotherhood of Locomotive Engineers and Trainmen (BLET). On June 27, 2019, Ferris was found in violation of USOR H – Furnishing Information and Conduct[2] and the Code of Business Conduct[3] and was immediately dismissed. *Id*. at 133. On September 6, 2019, Illinois Central denied BLET's appeal dated July 11, 2019. *Id*. at 145-149. A formal conference was held on October 31, 2019 but no agreement was reached. *Id*. at. 151. As a result, the parties submitted the dispute to PLB No. 7154 ("The Board") in accordance with the collective bargaining agreement.

Although the Board found that substantial evidence supported a finding that Ferris violated Illinois Central's Operating Rules and Code of Business, it ultimately determined that a penalty of dismissal was "excessive." R. Doc. 19-1 at 4. Instead the Board ordered that Ferris attend "diversity sensitivity training" and be reinstated without backpay, as a time-served suspension. *Id*. In making its determination, the Board found Illinois Central's harassment policy was "broad enough to cover off-duty conduct," and that "there are sufficient facts to show a nexus between the off-duty conduct and the workplace." *Id*. Notably, the Board recognized that even though the

---

[2] The relevant language of USOR Rule H – Furnishing Information and Conduct provides that employees are "expected to be familiar with, read and be governed by the Company's Code of Business Conduct and policies, and understand how they apply to you and your job." R. Doc. 19-1 at 124.
[3] The Code of Business Conduct states the Carrier's harassment policy: "Harassment is behavior or communications, whether written or verbal, which a reasonable person would consider to cause offence of humiliation or affect the dignity of a person and, in the context of employment, results in an intimidating, hostile or offensive atmosphere. At CN, harassment is considered employee misconduct and is not tolerated." R. Doc. 19-1 at 126.

2

comment was made to a non-African American, "a racial slur does not merely offend the person so addressed, it offends all African American members of the workforce." *Id*. However, the Board was not persuaded that Illinois Central established just cause for the penalty of discharge in light of Ferris' almost twenty-four (24) years of service with no discipline on his record and no similar incidents of misconduct. *Id*. The Board also considered Ferris' apology to the complainant and the complainant's willingness to continue working with Ferris. *Id*.

Petitioner Illinois Central alleges that the arbitration award "violates . . . public policy expressed in Title VII of the Civil Rights Act of 1964 . . . and the regulations of the Equal Employment Opportunity Commission," and as such, claims that the award should be vacated in its entirety. R. Doc. 1 at 5. Additionally, Illinois Central seeks an award of costs "and any other relief the Court deems just and proper." R. Doc. 1 at 6. To date, Petitioner has yet to honor the award and refuses to reinstate Ferris. R. Doc. 1 at 5.

Respondent BLET counterclaims against Petitioner to enforce Award No. 275 of PLB 7154 and to reinstate Ferris "and make him whole for all losses he has suffered [from the date of the Award to the date of his reinstatement] plus pre-judgment and post-judgment interest on all amounts he is due." R. Doc. 3 at 8. Moreover, Respondent seeks an award of costs, attorney's fees, and "other and further relief as the Court may deem appropriate . . . ." R. Doc. 3 at 9.

## II.   PENDING MOTIONS

### a. Illinois Central's Motion for Summary Judgment [R. Doc. 21]

Illinois Central seeks summary judgment that the PLB 7154 arbitration award be vacated because it violates the well-defined public policy requiring employers to prevent racial harassment in the workplace. R. Doc. 21. Illinois Central characterizes this policy as having been established by "Title VII and decades of case law interpreting Title VII and the EEOC's regulations and

3

guidance." *Id*. at 8. In particular, Illinois Central contends that the Board failed to account for Ferris' "incredibly cavalier attitude toward his use of such an offensive slur and how it could impact his co-workers." *Id*. at 6. Illinois Central argues that ordering the Carrier to reinstate Ferris without taking into account the likelihood that he would repeat his use of such an offensive word undermines the employers' ability to prevent and sanction harassment in the workplace *Id*. at 11.

BLET opposes the motion and argues that there is no public policy exception to support vacating an award that reinstated an employee, who on one occasion, made a racially insensitive remark. R. Doc. 24 at 8. BLET argues that the conduct at issue in this case cannot rise to the level of a Title VII violation because it fails under *West v. City of Houston's* multifactor test that considers the "severity" and "frequency" of the conduct and distinguishes "mere offensive utterances" from "physically threatening or humiliating conduct*." Id*. at 10. Accordingly, BLET contends that Illinois Central failed to "produce even one case of authority that supports its conclusion that the award may be vacated on public policy grounds." *Id*. at 15.

### b. BLET's Motion for Summary Judgment [R. Doc. 20]

BLET argues that the arbitration award must be enforced because Ferris' reinstatement does not violate public policy. In support, BLET emphasizes the specific facts and circumstances of this case, mainly that Ferris did not know he was on speakerphone. BLET insists that this demonstrates Ferris never intended to make the racial slur in the presence of African American employees; therefore, he cannot "possess a level of culpability that would merit termination" *Id.* at 17-18. Further, BLET points to a myriad of cases which have held that the "mere utterance of an ethnic or racial epithet" is insufficient to violate Title VII. *Id*. at 18 (citing *Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971)). BLET insists that Ferris does not regularly make comments like this, on or off the job, and that his coworker's willingness to continue working with him

demonstrates that he has not created a hostile environment. *Id*. Lastly, BLET argues that it is entitled to reasonable attorney's fees for its counterclaim for enforcement of the Award pursuant to Section 3, First (p) of the RLA which provides fees for a "prevailing petitioner."[4] *Id*. at 24-25.

Illinois Central opposes the motion and contends that the law does not require it to establish that Ferris' reinstatement violates Title VII. R. Doc. 23 at 2. Instead, Illinois Central maintains that it is sufficient to show that Ferris' reinstatement violates *the policy expressed in Title VII*, which prohibits the use of such racially offensive language and imposes an obligation on employers to prevent harassment. *Id*. (emphasis added). Illinois Central also disputes BLET's proposition that a single incident cannot give rise to liability under Title VII, insisting there is "no magic threshold" number of racially offensive incidents that create a hostile work environment. *Id*. at 4-7.

### III. LAW & ANALYSIS

#### a. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is proper if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). A court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light

---

[4] "If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises…If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." 45 U.S. Code § 153(p).

most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

Summary judgment is particularly appropriate in this case because the parties do not dispute the material facts found by the arbitrator. *See* the Stipulated Record, R. Doc. 19. The sole issue for the Court is whether the arbitrator's decision to reinstate Ferris should be overturned as a matter of public policy.

### b. Judicial Review of Arbitration Award

"Judicial review of arbitration awards is extremely limited." *Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 825–26 (5th Cir. 2001); *see also Union Pac. R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978) (recognizing that the scope of judicial review under the Railway Labor Act is "among the narrowest known to the law.") Federal labor law has established an arbitration scheme that favors "private settlement of labor disputes without the intervention of government." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37 (1987); *see also Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960) (noting that "the federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.").

There is, however, a legal exception developed by the jurisprudence which allows a court to refuse to enforce an arbitration award under a collective-bargaining agreement if it runs contrary to public policy. *Misco*, 484 U.S. at 468; *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62, (2000). To fall within the scope of this exception, an arbitration award must violate "some explicit public policy" that is "well defined and dominant, and [can] be ascertained 'by reference to the laws and legal precedents and not from general considerations of

6

supposed public interests.'" *W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983) (quoting *Muschany v. United States,* 324 U.S. 49, 66 (1945)). While the Supreme Court has "agreed, in principle, that courts' authority to invoke the public policy exception is not limited solely to instances where the arbitration award itself violates positive law,"[5] it nevertheless has affirmed that "the public policy exception is narrow and must satisfy the principles set forth in *W.R. Grace* and *Misco.*" *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 63 (2000).

Courts have vacated arbitration awards ordering reinstatement "where the discharged employees' conduct violated public policies while performing duties integral to their employment and where reinstatement would have jeopardized public health or safety." *Chrysler Motors Corp. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 959 F.2d 685, 689 (7th Cir. 1992); For example, public policy forbids the reinstatement of a railroad employee to a safety-sensitive position in those cases in which the employee poses a significant risk to the public because of the danger of future substance abuse. *Union Pac. R. Co. v. United Transp. Union*, 3 F.3d 255, 263 (8th Cir. 1993); *see e.g., Amalgamated Meat Cutters & Butcher Workmen, Local Union 540 v. Great Western Food Co.,* 712 F.2d 122 (5th Cir. 1983) (refusing to enforce award ordering reinstatement of trucker caught drinking on duty).

The Supreme Court has made clear that the question in these labor cases is not whether the employee's behavior violated some explicit public policy, but whether his reinstatement with specified condition violates public policy. *E. Associated Coal Corp.,* 531 U.S. at 62–63; *see also Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Local 767*, 253 F.3d 821, 826 (5th Cir. 2001) ("The question to be answered is not whether [the employee's] sexual harassment of

---

[5] *See id*, (Scalia, J., concurring) ("It is hard to imagine how an arbitration award could violate a public policy, identified in this fashion, without actually conflicting with positive law.").

female co-workers itself violates public policy, but whether the CBA, which (as interpreted by the arbitrator) provides for his reinstatement, does so.") Thus, it is not for this Court to determine whether Ferris' utterance of a racial slur violated public policy; rather, the question is whether the Board's award reinstating Ferris after a year-long suspension does so.

  **c. Discussion**

  There is no question that the public policy against racial harassment in the workplace is clearly defined and well-established. Title VII of the Civil Rights Act of 1964 protects employees against discrimination in the workplace and "makes it unlawful for employers to require 'people to work in a discriminatorily hostile or abusive environment.'" 42 U.S.C. §2000e-2; *West v. City of Houston, Texas*, 960 F.3d 736, 741 (5th Cir. 2020) (quoting *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019) (internal citations omitted). To prove a hostile work environment, a plaintiff must show that he 1) belongs to a protected group; 2) was subjected to unwelcome harassment; 3) the harassment complained of was based on race; 4) the harassment complained of affected a term, condition, or privilege of employment; 5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Frazier v. Sabine River Auth. Louisiana*, 509 F. App'x 370, 374 (5th Cir. 2013); *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005). An employer will be liable for racial harassment by co-workers if it "'knew or should have known' about the harassment and 'failed to take prompt remedial action.'" *West*, 960 F.3d at 741 (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)); *see also* 29 C.F.R. § 1604.11(d).

  Courts consider the totality of the circumstances in determining whether a hostile environment exists under Title VII. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether

it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Racial harassment must be "severe or pervasive" enough to alter the conditions of the victim's employment and create an abusive working environment. *E.E.O.C. v. WC&M Enterprises, Inc.*, 496 F.3d 393, 399 (5th Cir. 2007) (citing *Harris.,* 510 U.S. at 20-21); *see also Nichols v. Azteca Rest. Enterprises, Inc.*, 256 F.3d 864, 872 (9th Cir. 2001) (internal citations omitted) ("The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct."). A single incident of harassment may be sufficiently severe to give rise to a claim in some instances, while a continuous pattern of much less severe incidents of harassment may be pervasive enough to violate Title VII in other cases. *Melvin v. Barr Roofing Co.*, 806 F. App'x 301, 309 (5th Cir. 2020)

The Court recognizes that Ferris' use of this racial slur was "highly offensive and demeaning." The Fifth Circuit has described this term as "perhaps the most offensive and inflammatory racial slur in English, ... a word expressive of racial hatred and bigotry." *Vess v. MTD Consumer Grp., Inc.*, 755 F. App'x 404, 408–09 (5th Cir. 2019) (citation omitted). Accordingly, the Board was correct in finding Ferris guilty of violating Illinois Central's Operating Rules and Code of Conduct. R. Doc. 19-1 at 4.

Rather than sanctioning this conduct, the Board made clear that this is behavior that is not tolerable in any workplace. *Id.* Even though Ferris' was addressing non-African Americans, the Board emphasized that "a racial slur does not merely offend the person so addressed, it offends all African American members of the workforce." *Id.* Most importantly, the Board took corrective action and mandated that Ferris participate in racial sensitivity training and be reinstated without

backpay as a time served suspension. *Id*. This meant, in actuality, that Ferris was suspended without pay for a year.

In rendering its award, the Board considered the totality of the circumstances, including the facts giving rise to the complaint, Ferris' twenty-four years of service without any prior history of similar conduct, and the willingness of the complainant to continue working with the Ferris. The Board also highlighted Ferris' efforts to seek out his coworker to apologize, and complaint's acceptance of the apology. *Id*. For these reasons, the Board found that the railroad had not sufficiently demonstrated "just cause for the penalty of discharge." *Id*.

It is not the Court's role to substitute its own judgment for that of the arbitrator. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc*., 484 U.S. 29, 43 (1987) (emphasizing that "there is no broad judicial power to set aside arbitration awards as against public policy"); *United Steelworkers v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 598–99 (1960) (stating that a court may not overrule an arbitrator's interpretation of a contract merely because the court would have interpreted it differently). Although "reasonable people can differ as to whether reinstatement of discharge is the appropriate remedy," there is no dispute that "both employer and union have agreed to entrust this remedial decision to an arbitration." *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 67, (2000). Particularly when it comes to "formulating remedies", the Board brings an "informed judgment to bear in order to reach a fair solution of a problem." *Enterprise Wheel & Car Corp.,* 363 U.S. at 597.

The Board determined that under the totality of the circumstances, a time-served suspension rather than discharge was an adequate sanction for Ferris. While the Court certainly does not condone Ferris' behavior, his reinstatement in accordance with the arbitration award does

not run contrary to any dominant, well-defined public policy. Accordingly, the Court must affirm the arbitration award in light of the facts and circumstances of this particular incident.

### d. Award of Fees

Section 3, First (p) of the RLA provides that "[i]f the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." 45 U.S.C. § 153, First (p). As a counter-petitioner seeking compliance with a Board order, Ferris is entitled to reasonable attorney's fees and costs under this provision, which applies "whether the request for court-ordered compliance is made by way of a separate action or by means of a counterclaim to a petition for review." *Burlington N. Inc. v. Am. Ry. Sup'rs Ass'n*, 527 F.2d 216, 222 (7th Cir. 1975); *see also Norfolk & W. Ry. Co. v. Bhd. of Ry., Airline & S. S. Clerks, Freight Handlers, Exp. & Station Emp.,* 657 F.2d 596, 603 (4th Cir. 1981). This comports with Congressional intent in the Railway Labor Act to "redress the imbalance in the wealth of the parties" so that individual employees and unions would not be discouraged from enforcing its rights because of the expense of litigation outweighed the value of the award. *Burlington N. Inc.*, 527 F.2d at 222. Therefore, Ferris is entitled to reasonable attorney's fees in accordance with the Railway Labor Act. The amount of these fees will be determined at a later date.

BLET also requests damages for the period during which Illinois Central did not comply with the arbitration award. R. Doc. 3 at 8. Given the Board's decision that Ferris is to be reinstated as a time served suspension, it is clear Ferris is not entitled to backpay from the date of the dismissal on June 27, 2019 to the date Ferris was ordered to be reinstated on June 28, 2020. R. Doc. 19-1 at 4. However, to date, Illinois Central has not complied with the Board's decision, despite the arbitration order that the Carrier "make the Award effective on or before 30 days following the postmark date that Award is transmitted to the parties." *Id.* at 5. BLET plausibly

argues that since Ferris was entitled to reinstatement on June 28, 2020, he deserves to be made whole and should be awarded backpay for the period of his employer's noncompliance. In some instances, an arbitrator will account for contingencies such as legal challenges to the award. *See e.g.*, *United Steelworkers of America v. New Idea Farm Equipment Corp.,* 917 F.2d 964, 969 (6th Cir. 1990). In this case, the Board did not address the possibility of delay in Ferris' restatement due to Illinois Central challenging its decision. Therefore, the Court remands the issue of backpay for this period to the Board to resolve the ambiguity. *Marshall Durbin Companies, Inc. v. United Food & Commercial Workers Union, Local 1991*, 254 F.3d 1081 (5th Cir. 2001) (per curiam) (unpub.) (describing remand as the "best course of action" when the backpay issue was ambiguous); *Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, AFL-CIO, CLC, Local 182B v. Excelsior Foundry Co.,* 56 F.3d 844, 849 (7th Cir. 1995) (remanding the issue of backpay to the arbitrator when the employee was not reinstated because the award was challenged).

### VI. CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Respondent Brotherhood of Locomotive Engineers and Trainmen's motion, R. Doc. 20, is **GRANTED.** Respondent must submit a request for attorney's fees together with supporting documentation indicating time spent and nature of work performed for the Court's review within 14 days of this Order. *See* LR 54.2. Petitioner may submit any objections within 7 days thereafter.

**IT IS ORDERED** that the Award in case no. 275 of PLB 7154 is **AFFIRMED**. Illinois Central must comply with the terms of the Board's award and reinstate Kenneth Ferris as soon as practicable. The issue of backpay is **REMANDED** to the arbitrator to determine whether backpay is warranted for the period of the Carrier's noncompliance.

**IT IS ALSO ORDERED** that Petitioner's Illinois Central Railroad Company's Motion for Summary Judgment, R. Doc. 21, is **DENIED**.

New Orleans, Louisiana on this 4th day of December, 2020.

_____
UNITED STATES DISTRICT JUDGE